STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

FELICE VITI
First Assistant United States Attorney
District of Utah

HILARY K. PERKINS
Director
Enforcement & Affirmative Litigation Branch

JACQUELINE COLEMAN SNEAD
Deputy Director
Affirmative Litigation Section

BRANDON D. NEUMAN
Trial Attorney
U.S. Department of Justice
Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044
(202) 227-7416
Brandon.Neuman@usdoj.gov

*Attorneys for the United States of America*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UTAH BOARD OF HIGHER EDUCATION, STATE OF UTAH, GEOFFREY LANDWARD in his official capacity as COMMISSIONER OF HIGHER EDUCATION,**<br><br>**Defendants.** | **COMPLAINT**<br><br>**Case No.** 2:26-cv-842 |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**INTRODUCTION**

1. Federal law prohibits illegal aliens in the United States from being eligible for postsecondary education benefits based on their residence within a state that are not available to United States citizens regardless of their residence. *See* 8 U.S.C. § 1623(a) (2018). There are no exceptions. Yet Utah has ignored this federal law for over two decades.

2. Utah Code § 53H-11-203 (2025) and Utah Board of Higher Education Policy R513, Tuition Waivers and Reductions (amended May 14, 2026), extend eligibility for in-state tuition benefits at Utah postsecondary education institutions to illegal aliens while U.S. citizens from other states are ineligible.

3. Beyond establishing eligibility for in-state tuition benefits to illegal aliens, other Utah laws and regulations make illegal aliens eligible for scholarships and grants based on their residence in Utah while denying the same benefits to U.S. citizens in other states. Utah Code § 63G-12-402 (2025) and Utah Admin. Code R765-612 (2026) extend eligibility for scholarships to illegal aliens based on residency in Utah but deny such eligibility to U.S. citizens in other states. Similarly, the Utah Promise Program (Utah Code § 53H-11-414 (2025), Utah Admin. Code R765-620) and Opportunity Scholarship Program (Utah Code § 53H-11-402 (2026), Utah Admin. Code R765-612) extend eligibility for scholarships to illegal aliens based on residency in Utah but deny such eligibility to U.S. citizens in other states.

4. Utah's postsecondary education benefits scheme engages in blatant unequal treatment that favors illegal aliens over U.S. citizens. Such preferential treatment of illegal aliens is squarely prohibited and preempted by federal law mandating that "an alien who is not lawfully

present in the United States *shall not be* eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added) ("Section 1623(a)"). Accordingly, under the Supremacy Clause of the Constitution, the portions of Utah Code §§ 53H-11-203, 53H-11-402, 53H-11-414, and 63G-12-402, Utah Admin. Code R765-612, R765-620, and Utah Bd. of Higher Educ., and Policy R513, Tuition Waivers and Reductions (amended May 14, 2026) that extend eligibility for in-state postsecondary education benefits to illegal aliens based on residency in Utah while denying such eligibility to all U.S. citizens regardless of their residence are unconstitutional and must yield to federal law.

5. Courts have long recognized Section 1623(a)'s express preemptive effect. *See, e.g.*, *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (holding that Section 1623 "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible"); *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a), "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *8 (Ariz. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .").

6. Numerous courts have struck down similar in-state tuition laws as unconstitutional based on Section 1623(a)'s preemptive effect. *See, e.g.*, *United States v. Kansas*, No. 5:26-CV-

04066, 2026 WL 2654069 (D. Kan. Sept. 9, 2026) (finding Kansas in-state tuition statute "preempted because it confers a postsecondary education benefit on an unlawfully present alien based on a state-defined residency conclusion without making that same benefit generally available to United States citizens and nationals regardless of their residence"); *United States v. Illinois*, No. 25-CV-1691, 2026 WL 2137256, at *8–11 (S.D. Ill. July 24, 2026) (finding Illinois in-state tuition statutes as applied to illegal aliens expressly preempted by Section 1623(a)); *United States v. Nebraska*, --- F.Supp.3d ---, No. 8:26-CV-172, 2026 WL 1584862, at *27 (D. Neb. June 3, 2026) (holding Nebraska laws were preempted by Section 1623(a) because "they allow aliens unlawfully present in the United States to qualify as 'residents' of Nebraska for the purpose of post-secondary education benefits but deny such benefits to United States citizens of other states'"); *United States v. Oklahoma*, No. 6:25-CV-00265, ECF No. 23 at 1 (E.D. Okla. Aug. 29, 2025) (Order and Final Consent Judgment) (holding that challenged Oklahoma in-state tuition laws "as applied to aliens who are not lawfully present in the United States, violates the Supremacy Clause and are unconstitutional and invalid"); *United States v. Texas*, No. 7:25-CV-00055, 2025 WL 1583869, at *1 (N.D. Tex. June 4, 2025) (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because the challenged provisions violated the Supremacy Clause); *see also United States v. Texas*, 181 F.4th 548, 552–55 (5th Cir. 2026).

7. Moreover, because Utah Admin. Code R765-612, R765-620, and Utah Bd. of Higher Educ., and Policy R513, Tuition Waivers and Reductions (amended May 14, 2026), are not enactments of state law that provide for eligibility of public benefits, they also violate 8 U.S.C. § 1621(d). *See United States v. Kentucky Council on Postsecondary Educ.*, No. 3:25-CV-00028, 2026 WL 880597 (E.D. Ky. Mar. 31, 2026) (holding Kentucky regulation violated federal law, 8

U.S.C. § 1621(d), because it was a regulation, not an enacted state law as required by Section 1621(d)). Thus, Utah's postsecondary education benefits scheme is preempted twice over, and this Court should join the other courts in invalidating such laws.

**JURISDICTION AND VENUE**

8. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

9. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because all Defendants reside in this judicial district and a substantial portion of the events giving rise to this Complaint arose from events occurring within this judicial district.

10. The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2202, in addition to the Court's inherent equitable powers.

**PARTIES**

11. Plaintiff, the United States of America, regulates immigration under its inherent, constitutional, and statutory authorities. Plaintiff enforces federal immigration laws through its Executive agencies, including the Department of Justice, Department of Homeland Security and component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

12. Defendant Utah Board of Higher Education ("Board") governs Utah's "institutions of higher education" and "controls, oversees, and regulates the Utah System of Higher Education." Utah Code § 53H-1-203(1)(a). The Board's duties include "setting tuition for each institution," and "administering state financial aid programs." Utah Code § 53H-1-203(2)(j). Moreover, the Board "make[s] rules for the implementation" of resident tuition rates and establishes "eligibility" for scholarships. Utah Code §§ 53H-11-203(3), 53H-11-414(7), and 53H-11-402(5).

13. Defendant State of Utah is a state of the United States.

14. Defendant Geoffrey Landward in his official capacity as Commissioner of Higher Education ("Commissioner") is the "chief executive officer" of the Board. Utah Code § 53H-1-302(1)(a). Among other things, the Commissioner "ensure[s] the proper execution of the policies, programs, and strategic plan of the board," and "provide[s] state-level leadership in any activity affecting an institution of higher education." Utah Code § 53H-1-302(3).

**FEDERAL LAW**

15. The Constitution empowers Congress to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

16. The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.

17. The United States has inherent, well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from its inherent obligations as a sovereign, the Constitution, and numerous acts of Congress. *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare . . . ."); *Ping v. United States*, 130 U.S. 581, 603–04 (1889) ("Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens it would be to that extent subject to the control of another power."); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens

is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation. When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.”).

18. Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (explaining that matters of immigration concern “policy questions entrusted exclusively to the political branches of our Government,” leaving “no judicial authority” for courts “to substitute [their] political judgment for that of the Congress”).

19. In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act (“PRWORA”) and the Illegal Immigration Reform and Immigrant Responsibility Act (“IIRIRA”). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). Through PRWORA and IIRIRA, Congress sought to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration.

*See id.*; *see also* 8 U.S.C. § 1601(1) ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

20. Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id.* § 1601(2)(A).

21. Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B).

22. Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. §§ 1601(5), (6).

23. PRWORA states: "A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible . . . only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d).

24. Even in such cases, a state may not offer in-state tuition (or "resident tuition") benefits to illegal aliens present in the United States based on their residence in the state if those same benefits are denied to American citizens from other states. *See* 8 U.S.C. § 1623(a). IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." *Id.*

25. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount,

duration, and scope) without regard to whether the citizen or national is such a resident.[1]

26. Accordingly, under 8 U.S.C. § 1623(a), illegal aliens present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are also offered to all American citizens, regardless of their state of residence.

27. On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*,[2] ordering Federal Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens[.]" *Id*. at § 2(a).

28. On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*,[3] directing relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." *Id*. at § 5.

29. These Executive Orders emphasize that state governments must not confer greater benefits to illegal aliens present in the United States than to U.S. citizens. They also reflect

---

[1] Section 1623 evidences that Congress contemplated federal enforcement of the statutory prohibition on providing illegal aliens in-state tuition. *See Day v. Bond*, 500 F.3d 1127, 1139 (10th Cir. 2007) ("[T]he language of § 1623, in combination with [8 U.S.C.] § 1103(a)(1), provides further evidence that federal, not private, enforcement of § 1623 was contemplated by Congress.").

[2] Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 19, 2025), https://www.whitehouse.gov/presidential-actions/2025/02/ending-taxpayer-subsidization-of-open-borders/.

[3] Executive Order 14287, *Protecting American Communities From Criminal Aliens*, 90 Fed. Reg. 18761 (Apr. 28, 2025), https://www.whitehouse.gov/presidential-actions/2025/04/protecting-american-communities-from-criminal-aliens/.

Congress's end—expressed in multiple provisions of the Immigration and Nationality Act, as well as PRWORA and IIRIRA—to reduce incentives for illegal immigration by limiting access to certain public benefits intended for U.S. citizens.

**UTAH LAWS AND POLICY**

30. Utah rewards illegal aliens with in-state tuition and scholarship eligibility based on their residence in Utah, while denying the same to U.S. citizens regardless of their residence.

31. House Bill 144[4] and Senate Bill 111, codified at Utah Code § 53H-11-203, concerning the "requirements" for "resident tuition," make "a student without lawful immigration status" eligible for resident tuition rates so long as that student meets residency-by-proxy requirements like attending a Utah high school for three or more years and graduating from a high school in Utah. *See* Utah Code § 53H-11-203.

32. Similarly, Utah law affords illegal aliens scholarship eligibility. *See* Utah Code §§ 63G-12-402(3) (codification of SB 253[5] and SB 136), 53H-11-414, 53H-11-402. Moreover, Utah law explicitly does not require verification of lawful presence in the United States for in-state tuition rates or scholarship eligibility. *See* Utah Code § 63G-12-402(3).

33. The Board reinforces the extension of eligibility for resident tuition and scholarship benefits to illegal aliens who reside in Utah but not to all U.S. citizens regardless of their residence.

---

[4] The University of Utah, *Dream Center*, https://dream.utah.edu/faq.php [https://perma.cc/685X-E2MD] ("H.B. 144 allows qualifying undocumented students (with and without DACA) to pay in-state tuition, the same rate as Utah residents.").

[5] The University of Utah, *Dream Center*, https://dream.utah.edu/faq.php [https://perma.cc/685X-E2MD] ("Senate Bill 253 . . . allows Utah high school graduates to be eligible for consideration of private scholarships administered through the University of Utah without proof of lawful presence in the United States. In other words, undocumented students (with and without DACA) who graduate from a Utah high school or GED program are eligible to apply for private scholarships administered through the University of Utah.").

*See* Utah Admin. Code R765-612; Utah Admin. Code R765-620; Utah Bd. of Higher Educ., Policy R513, *Tuition Waivers and Reductions* (amended May 14, 2026).

**A. Utah Makes Illegal Aliens Eligible for Resident Tuition.**

34. Utah law rewards illegal aliens with eligibility for in-state tuition benefits based on their residence within Utah, while explicitly denying eligibility to U.S. citizens regardless of their residence. *See* Utah Code § 53H-11-203.

35. Utah, like most states, charges two separate tuition rates at Utah public universities, colleges, and community colleges: resident and nonresident tuition. *See id.* § 53H-11-202.

36. For example, the University of Utah charges Utah residents approximately $10,480 in tuition for one academic year but charges non-Utah residents approximately $32,932.[6] Utah State University charges Utah residents approximately $4,532 in tuition for one semester but charges non-Utah residents approximately $13,255.[7]

37. Section 53H-11-203 rewards illegal aliens with eligibility for resident tuition in Utah while denying that same benefit to United States citizens who are not residents of Utah. *See* Utah Code § 53H-11-203.

38. Section 53H-11-203 extends eligibility for resident tuition in Utah to illegal aliens. A student "shall be exempt from paying the nonresident portion of total tuition" if he or she: "(a) attended high school in this state for three or more years; (b) graduated from a high school in this state or received the equivalent of a high school diploma in this state; and (c) registers as an entering student at an institution of higher education." Utah Code § 53H-11-203(1).

---

[6] The University of Utah, *Cost of Attendance*, https://financialaid.utah.edu/tuition-and-fees/cost-of-attendance.php [https://perma.cc/B74K-CHKK].

[7] Utah State University, *Cost of Attendance*, https://www.usu.edu/financial-support/coa [https://perma.cc/MY7U-MZT8].

39. The Board affirms similar language to Section 53H-11-203 in Policy R513-5.5:

> A student, other than a non-immigrant alien within the meaning of paragraph (15) of subsection (a) of section 1101 of Title 8 of the United States Code, shall be exempt from paying the nonresident portion of total tuition if the student: 5.5.1 Attended high school in Utah for three or more years; 5.5.2 Graduated from a high school in this state or received the equivalent of a high school diploma in Utah; and 5.5.3 Registers as an entering student at an institution of higher education not earlier than the fall of the 2002-03 academic year.

Utah Bd. of Higher Educ., Policy R513, *Tuition Waivers and Reductions* § 5.5 (amended May 14, 2026).

40. Section 53H-11-203 explicitly addresses illegal alien access to resident tuition: "a student without lawful immigration status shall file an affidavit with the institution of higher education stating that the student has filed an application to legalize his immigration status, or will file an application as soon as he is eligible to do so." Utah Code § 53H-11-203(2).

41. The Board incorporates Section 53H-11-203's language in Policy R513-5.5.4: "a student without lawful immigration status shall file an affidavit with the USHE institution stating that the student has filed an application to legalize their immigration status or will file an application as soon as he or she is eligible to do so." Utah Bd. of Higher Educ., Policy R513, *Tuition Waivers and Reductions* § 5.5.4 (amended May 14, 2026).

42. In addition, Utah universities reserve discretion to award resident tuition rates to students otherwise ineligible: "[n]othing in this section limits the ability of institutions of higher education to assess nonresident tuition on students who do not meet the requirements under this section." Utah Code § 53H-11-203(4); *see id.* § 53H-11-202(6).

43. Put differently, an illegal alien is eligible for resident tuition in Utah so long as he or she 1) attended high school in Utah for three or more years; 2) graduated from a Utah high school, or received a high school diploma equivalent in Utah; 3) registers at a Utah institute of

higher education; and 4) files an affidavit with the institution of higher education stating that the student has filed, or will file, for legal immigration status. *See* Utah Code § 53H-11-203.

44. Illegal aliens eligible for resident tuition are not required to verify whether they are lawfully present in the United States. Utah Code § 63G-12-402 governs verification for the receipt of benefits and requires verification of lawful presence for aliens not lawfully present except that "[v]erification of lawful presence under this section is not required for . . . the exemption for paying the nonresident portion of total tuition as set forth in Section 53H-11-203." Utah Code § 63G-12-402(3)(f).

45. The Board reaffirms Section 63G-12-402 in Policy R513-4.11. Utah Bd. of Higher Educ., Policy R513, *Tuition Waivers and Reductions* § 4.11 (amended May 14, 2026). A student is exempt from "verification of lawful presence in the United States" if he is "a graduate of a high school located in Utah and (1) is exempt from paying the nonresident portion of total tuition under Utah Code section 53H-11-203." *Id*.

46. Since school attendance is compulsory in Utah, *see* Utah Code § 53G-6-202(2), and Utah conditions the availability of free public high school education on residence, *see* Utah Code §§ 53E-2-201(1)(c), 53G-6-306(3)(a), 53G-6-302(2), 53G-6-302(6), resident tuition eligibility is based on residence in Utah. *See* Utah Code § 53H-11-203 (making students who "attended high school in this state for three or more years," and "graduated from a high school in this state or received the equivalent of a high school diploma in this state" eligible for resident tuition); Utah Const. art. X, §§ 1 ("The Legislature shall provide for the establishment and maintenance of the state's education systems including . . . a public education system, which shall be open to all children of the state[.]"), 2 ("Public elementary and secondary schools shall be free[.]").

47. Accordingly, under Utah law, the tuition rate for an illegal alien who satisfies Section 53H-11-203's criteria is the same tuition rate as for other Utah residents. However, a U.S. citizen who is not eligible for resident tuition under Section 53H-11-203 (i.e., a U.S. citizen residing in a state other than Utah), is required to pay higher, nonresident tuition.

48. Put simply, Utah's statutory resident tuition scheme confers preferential treatment to illegal aliens who reside in Utah over U.S. citizens outside of Utah.

**B. Utah Makes Illegal Aliens Eligible for Scholarships and Financial Assistance Based on Their Residence in Utah.**

49. Utah law makes illegal aliens eligible for scholarships based on their residence in Utah, while denying scholarship eligibility to U.S. citizens who are not residents of Utah. *See* Utah Code § 63G-12-402. This includes the Utah Promise Program (Utah Code § 53H-11-414, Utah Admin. Code R765-620), the Opportunity Scholarship Program (Utah Code § 53H-11-402, Utah Admin. Code R765-612), and a catchall provision for scholarships (Utah Code § 63G-12-402, Utah Bd. of Higher Educ., Policy R513, *Tuition Waivers and Reductions* § 4.11 (amended May 14, 2026)).

**The Utah Promise Program**

50. Utah Code § 53H-11-414 outlines the Utah Promise Program, which is intended "to provide financial assistance to students." Utah Code § 53H-11-414(3). The Board executes the Utah Promise Program through Rule 765-620. Utah Admin. Code R765-620.

51. Eligibility for the Utah Promise Program is extended to "financially needy" students who are "admitted to and enrolled at a Utah postsecondary institution on at least a half-time basis . . . making satisfactory academic progress," "not a graduate student," and either "a resident student" or "exempt from paying the nonresident portion of total tuition under Section 53H-11-203." Utah Code § 53H-11-414(1)(b).

52. The Utah Promise Program relies on Section 53H-11-203's resident tuition requirements. Section 53H-11-203 grants eligibility for resident tuition to illegal aliens based on residency in Utah. Thus, illegal aliens are eligible for benefits under the Utah Promise Program based on their residence in Utah. *See supra* ¶¶ 30, 35–49.

53. The Utah Promise Program does not require the "[v]erification of lawful presence." Utah Code § 63G-12-402(3); Utah Admin. Code R765-620-4(3).

54. The Utah Promise Program (Utah Code § 53H-11-414, Utah Admin. Code R765-620) makes illegal aliens in Utah eligible for financial aid benefits so long as they satisfy Utah residence requirements, while denying the same benefit to U.S. citizens who are not residents of Utah. *See* Utah Code § 53H-11-414.

**The Opportunity Scholarship Program**

55. Section 53H-11-402 creates the Opportunity Scholarship Program, a scholarship for Utah college students. Utah Code § 53H-11-402. The Board establishes eligibility for the Opportunity Scholarship Program through Rule 765-612-4. Utah Admin. Code R765-612-4.

56. Students qualify for the Opportunity Scholarship Program by "graduat[ing] from a Utah high school," in addition to meeting a grade point average minimum, taking certain courses, and submitting a student financial aid form. Utah Admin. Code R765-612-4(1)(a).

57. The Utah high school graduation requirement is a proxy for residence in Utah. *See* Utah Code §§ 53G-6-202(2), 53E-2-201(1)(c), 53G-6-306(3)(a), 53G-6-302(2), 53G-6-302(6); Utah Const. art. X, §§ 1, 2.

58. The Opportunity Scholarship Program explicitly does not require the "[v]erification of lawful presence." Utah Code § 63G-12-402(3); Utah Admin. Code R765-612-4(2).

59. The Opportunity Scholarship Program (Section 53H-11-402), as executed through Rule 765-612-4, makes illegal aliens eligible for financial aid benefits so long as they satisfy Utah

residence requirements while denying those benefits to U.S. citizens who are not residents of Utah. *See* Utah Code § 53H-11-402; Utah Admin. Code R765-612-4.

**Other Utah Scholarships**

60. Individuals who apply for any other scholarship in Utah that is administered by an institution of higher education in Utah and that makes students eligible on the basis of graduation from a high school within Utah are not required to verify their immigration status. Utah Code § 63G-12-402(3).

61. The Board, in turn, carries this out through Policy R513-4.11, which provides that a scholarship applicant is exempt from "verification of lawful presence in the United States" if he is "a graduate of a high school located in Utah and (1) is exempt from paying the nonresident portion of total tuition under Utah Code section 53H-11-203; or (2) applies for and may be awarded, a privately funded scholarship that is administered by a USHE institution." Utah Bd. of Higher Educ., Policy R513, *Tuition Waivers and Reductions* § 4.11 (amended May 14, 2026).

62. The Utah high school graduation requirement is a proxy for residence in Utah. *See* Utah Code §§ 53G-6-202(2), 53E-2-201(1)(c), 53G-6-306(3)(a), 53G-6-302(2), 53G-6-302(6); Utah Const. art. X, §§ 1, 2.

63. Policy R513-4.11 makes illegal aliens eligible for financial assistance benefits based on their residence in Utah because it relies on Section 53H-11-203's residence requirements. *See id*. Section 53H-11-203 makes illegal aliens eligible for resident tuition benefits based on their residence in Utah. *See supra* ¶¶ 30, 35–49. Because Policy R513-4.11 makes scholarships available to individuals who are eligible for resident tuition benefits under Section 53H-11-203, Policy 513-4.11 makes illegal aliens eligible for scholarships based on their residence in Utah.

64. The University of Utah's "Community Scholarship" is an illustrative example. This scholarship is explicitly open to "undocumented students."[8] The University cites Senate Bill 253 (codified in Section 63G-12-402) for why "undocumented students (with and without DACA) who graduate from a Utah high school or GED program are eligible to apply for private scholarships administered through the University of Utah."[9]

65. Section 63G-12-402 and Policy R513-4.11 thus make illegal aliens eligible for scholarships so long as they satisfy Utah residency requirements, while a U.S. citizen who is not a Utah resident is not eligible. *See* Utah Code § 63G-12-402(3); Utah Bd. of Higher Educ., Policy R513, *Tuition Waivers and Reductions* § 4.11 (amended May 14, 2026).

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION OF UTAH CODE § 53H-11-203)

57. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

58. The Supremacy Clause of the U.S. Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2.

*59.* The preemption doctrine is derived from the Supremacy Clause. Express preemption occurs when Congress includes express language within the statute indicating its preemptive intent. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

---

[8] The University of Utah, *About Scholarships*, https://soc.utah.edu/undergraduate/scholarships.php [https://perma.cc/S68G-78ST].

[9] The University of Utah, *Dream Center*, https://dream.utah.edu/faq.php [https://perma.cc/685X-E2MD].

60. Section 53H-11-203, to the extent that it extends eligibility for resident tuition benefits to illegal aliens based on their residence in Utah while denying the same to U.S. citizens residing in other states, directly conflicts with Congress's prohibition on providing eligibility for postsecondary education benefits (i.e., lower, resident tuition rates) to aliens not lawfully present in the United States based on their residence within a state unless such benefits are available to all United States citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

61. Accordingly, the challenged provision, Utah Code § 53H-11-203, is preempted and unconstitutional.

**COUNT II**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF UTAH CODE § 53H-11-402)**

57. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

58. Section 53H-11-402, to the extent that it extends eligibility for postsecondary education benefits to aliens not lawfully present in the United States based on their residence in Utah while denying the same to U.S. citizens regardless of their residence in Utah, directly conflicts with Congress's prohibition on providing eligibility for postsecondary education benefits (i.e., the Opportunity Scholarship Program) to aliens not lawfully present in the United States based on their residence within a state unless such benefits are available to all United States citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

59. Accordingly, the challenged provision, Utah Code § 53H-11-402, is preempted and unconstitutional.

**COUNT III**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF UTAH CODE § 53H-11-414)**

60. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

61. Section 53H-11-414, to the extent that it extends eligibility for scholarship benefits to aliens not lawfully present in the United States based on their residence in Utah while denying the same to U.S. citizens regardless of their residence in Utah, directly conflicts with Congress's prohibition on providing eligibility for postsecondary education benefits (i.e., the Utah Promise Program) to aliens not lawfully present in the United States based on their residence within a state unless such benefits are available to all United States citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

62. Accordingly, the challenged provision, Utah Code § 53H-11-414, is preempted and unconstitutional.

**COUNT IV**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF UTAH CODE § 63G-12-402)**

63. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

64. Section 63G-12-402(3), to the extent that it extends eligibility for resident tuition and scholarship benefits to aliens not lawfully present in the United States based on their residence in Utah while denying the same to U.S. citizens regardless of their residence in Utah, directly conflicts with Congress's prohibition on providing eligibility for postsecondary education benefits (i.e., lower, resident tuition rates and scholarships) to aliens not lawfully present in the United

States based on their residence within a state unless such benefits are available to all United States citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

65. Accordingly, the challenged provision, Utah Code § 63G-12-402(3), is preempted and unconstitutional.

**COUNT V**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF UTAH BD. OF HIGHER EDUC., POLICY R513, TUITION WAIVERS AND REDUCTIONS (AMENDED MAY 14, 2026))**

66. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

67. Policy R513, to the extent that it extends eligibility for resident tuition and scholarship benefits to aliens not lawfully present in the United States based on their residence in Utah while denying the same to U.S. citizens regardless of their residence in Utah, directly conflicts with Congress's prohibition on providing eligibility for postsecondary education benefits (i.e., lower, resident tuition rates and scholarships) to aliens not lawfully present in the United States based on their residence within a state unless such benefits are available to all United States citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

68. Accordingly, the challenged provision, Utah Bd. of Higher Educ., Policy R513, *Tuition Waivers and Reductions* (amended May 14, 2026), is preempted and unconstitutional.

**COUNT VI**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF UTAH ADMIN. CODE R765-620)**

69. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

70. Utah Admin. Code R765-620, to the extent that it extends eligibility for postsecondary education benefits to aliens not lawfully present in the United States based on their

residence in Utah while denying the same to U.S. citizens regardless of their residence in Utah, directly conflicts with Congress's prohibition on providing eligibility for postsecondary education benefits (i.e., Utah Promise Program) to aliens not lawfully present in the United States based on their residence within a state unless such benefits are available to all United States citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

71. Accordingly, the challenged provision, Utah Admin. Code R765-620, is preempted and unconstitutional.

**COUNT VII**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF UTAH ADMIN. CODE R765-612)**

72. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

73. Utah Admin. Code R765-612, to the extent that it extends eligibility for postsecondary education benefits to aliens not lawfully present in the United States based on their residence in Utah while denying the same to U.S. citizens regardless of their residence in Utah, directly conflicts with Congress's prohibition on providing eligibility for postsecondary education benefits (i.e., Opportunity Scholarship Program) to aliens not lawfully present in the United States based on their residence within a state unless such benefits are available to all United States citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

74. Accordingly, the challenged provision, Utah Admin. Code R765-612, is preempted and unconstitutional.

**COUNT VIII**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF UTAH BD. OF HIGHER EDUC., POLICY R513, TUITION WAIVERS AND REDUCTIONS (AMENDED MAY 14, 2026))**

75. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

76. Policy R513, which is not an enactment of state law, violates Section 1621(d)'s requirement that illegal aliens "not [be] eligible for any State or local public benefit," unless "through enactment of a State law." 8 U.S.C. § 1621(a), (d).

77. Accordingly, the challenged provision, Utah Bd. of Higher Educ., Policy R513, *Tuition Waivers and Reductions* (amended May 14, 2026), is preempted and unconstitutional.

**COUNT IX**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF UTAH ADMIN. CODE R765-620)**

78. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

79. Rule 765-620, which is not an enactment of state law, violates Section 1621(d)'s requirement that illegal aliens "not [be] eligible for any State or local public benefit," unless "through enactment of a State law." 8 U.S.C. § 1621(a), (d).

80. Accordingly, the challenged provision, Utah Admin. Code R765-620, is preempted and unconstitutional.

**COUNT X**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF UTAH ADMIN. CODE R765-612)**

81. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

82. Rule 765-612, which is not an enactment of state law, violates Section 1621(d)'s requirement that illegal aliens "not [be] eligible for any State or local public benefit," unless "through enactment of a State law." 8 U.S.C. § 1621(a), (d).

83. Accordingly, the challenged provision, Utah Admin. Code R765-612, is preempted and unconstitutional.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following relief:

1. That this Court enter a judgment declaring that Utah Code §§ 53H-11-203, 53H-11-402, 53H-11-414, 63G-12-402, Utah Admin. Code R765-620, 765-612, and Utah Bd. of Higher Educ., Policy R513, *Tuition Waivers and Reductions* (amended May 14, 2026), to the extent that they extend eligibility for postsecondary education benefits to illegal aliens on the basis of their residence in Utah but deny the same eligibility for such benefits to U.S. citizens regardless of residence, are preempted by federal law and therefore invalid under the Supremacy Clause;

2. That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing Utah Code §§ 53H-11-203, 53H-11-402, 53H-11-414, 63G-12-402, Utah Admin. Code R765-620, 765-612, and Utah Bd. of Higher Educ., Policy R513, *Tuition Waivers and Reductions* (amended May 14, 2026), or any similar subsequent statutes, rules or regulations, because they extend eligibility for postsecondary education benefits to illegal aliens on the basis of their residence in Utah but deny eligibility for the same benefits to U.S. citizens regardless of their residence;

3. That this Court award the United States its costs and fees in this action; and

4. That this Court award any other relief it deems just and proper.

DATED: September 10, 2026

Respectfully Submitted,

FELICE VITI
First Assistant United States Attorney
District of Utah

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

HILARY K. PERKINS
Director
Enforcement & Affirmative Litigation Branch

JACQUELINE COLEMAN SNEAD
Deputy Director
Affirmative Litigation Section

*s/ Brandon D. Neuman*
BRANDON D. NEUMAN (CA Bar 319067)
Trial Attorney
Enforcement & Affirmative Litigation Branch
Civil Division, U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
(202) 227-7416
Brandon.Neuman@usdoj.gov

*Attorneys for the United States of America*